A96A1654. MALONE v. THE STATE.
A96A1655. SMITH v. THE STATE.
(484 SE2d 6)

JOHNSON, Judge.

Helen Malone and Dr. Theodore Smith were tried jointly and convicted of Medicaid fraud for seeking reimbursement for psychotherapy services which had not been rendered. Malone appeals in Case No. A96A1654, and Smith appeals in Case No. A96A1655. Because the appellants raise similar enumerations of error, their appeals have been consolidated.

1. Of the eleven peremptory challenges defense counsel made on Malone's and Smith's behalf, ten were used against white and one against Asian-American veniremen. None of the defendants' peremptory strikes was exercised against the African-American veniremen. The state opposed the strikes under *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992), claiming that they were used with the intent of eliminating white people from the jury. The trial court found that a prima facie case of racial discrimination had been made and then stated: "I will make him justify his strikes. If I don't think it's right, they will not be struck." Defense counsel explained the strikes, but the trial court ruled that the reasons given were not race-neutral and placed five of the jurors back on the jury.

In separate briefs, Smith and Malone argue that the trial court erred in finding that the explanations defense counsel offered were not race-neutral. Smith argues further that in considering the state's motion, the trial court erroneously merged the second and third steps of the test set forth in *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), thereby placing the burden of persuasion on the proponent of the strikes. We agree with both contentions. For the reasons set out below, we reverse and remand the cases for a new trial.

"In *McCollum*, the United States Supreme Court extended its decision in *Batson v. Kentucky* and held that the equal protection clause prohibits a criminal defendant from engaging in purposeful discrimination on the basis of race in the exercise of peremptory challenges. To evaluate claims that the state or defendant used peremptory challenges in a racially discriminatory manner, the trial court must engage in a three-step process. The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the *opponent* of the strike has proven discriminatory intent." (Footnotes omitted; emphasis supplied.) *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996).

As noted above, after determining that a prima facie case of discrimination had been established, the trial court properly required

defense counsel to explain their peremptory strikes. Defense counsel explained the five strikes at issue as follows:

Dr. Smith's attorney explained that he struck juror no. 2 because of her age and the fact that she listed her name using "Mrs." and her husband's first name. Malone's attorney added that juror no. 2 had been exposed to publicity in the case. The trial judge responded that "75 percent of them or more" had been exposed to publicity, that his own wife uses his name, and that neither reason would be accepted.

Smith's attorney explained that he struck juror no. 8 because he did not trust her. He said she was not credible because she claimed to have studied nuclear engineering at Georgia Tech, but works at Office Depot, and that she crossed her arms and looked away when answering questions. Malone's attorney added that he did not like the fact that the juror had a business background and therefore may be predisposed to agree with the state. The court stated that it could not accept the explanations.

Smith's attorney could not recall why juror no. 11 was struck, while Malone's attorney noted that he looks at the type of work a person does and that she was a data processor. The trial judge stated that he could not accept this explanation, either.

Smith's attorney struck juror no. 13 because she worked as a manager for the federal reserve bank and she stated that she thought the government did a good job most of the time. He noted that the defense's theory of the case was that "the government screwed up," and that it would be hard to convince this juror of that point. The court remarked that an African-American juror who worked for the federal government was not struck. Smith's attorney responded that the African-American juror was not struck because she was not in a supervisory position. The trial court recalled that this African-American juror was also a supervisor, but the defense attorney's assertion that the employee was not a supervisor is corroborated by the transcript. The court stated that the difference between the two jurors was their race and rejected the explanation.

Smith's attorney explained that he struck juror no. 18 because he said "something about North Druid Hills. And I made a note that I did not like whatever he said about it." Malone's attorney added that the juror had been exposed to publicity about the case and "seemed to me not to keep an open mind." The court ruled that the juror would be placed back on the jury.

At the end of this colloquy, the trial court expressly ruled that the defendants' strikes were not race-neutral. All five jurors were then reseated on the jury, thereby completing the jury of twelve.

In articulating a race-neutral explanation for striking a juror, the proponent of the strike is not required to enunciate a plausible or persuasive explanation, just one that is clear, reasonably specific and

that does not deny equal protection. *Jackson v. State*, 265 Ga. 897, 898-899 (2) (463 SE2d 699) (1995). "At this second step of the inquiry, the issue is the *facial validity* of the [attorney's] explanation. Unless a discriminatory intent is inherent in the [attorney's] explanation, the reason offered will be deemed race neutral. *Hernandez* [*v. New York*], 500 [U. S. 352, 360 (111 SC 1859, 114 LE2d 395) (1991)]; [cit.]." (Punctuation omitted; emphasis supplied.) *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834, 839 [2]) (1995).

In *Jackson v. State*, supra, defense counsel explained that he struck a white juror because she worked in her husband's bonding company. The trial court refused to accept the explanation as being race-neutral. Defense counsel added that his client "jumped bond" and that the juror might be biased against the defendant. The Supreme Court of Georgia reversed Jackson's conviction and ordered a new trial, holding that the trial court should have accepted the explanation as race-neutral and *then* decided whether the reason given was persuasive and whether the *opponent* of the strike had established discriminatory intent. Id. at 899.

Similarly, in *Chandler v. State,* supra, the Supreme Court of Georgia reversed a conviction and ordered a new trial where the trial court erroneously failed to accept defense counsel's explanation as race-neutral. When the state in that case raised a *McCollum* objection, defense counsel explained that he struck two white jurors because they were in managerial positions and had authoritarian personalities. He claimed that jury surveys and mock trials had shown he should avoid authoritarian figures when selecting jurors. *Chandler* at 509. The Supreme Court held that Chandler had articulated a race-neutral reason for striking the jurors, one that was not based on either race or sex and that, even under our deferential standard of review, the trial court's finding was clearly erroneous and resulted in an illegally constituted jury. Id. at 510.

In the instant case, it is fairly easy to understand why the trial court found some of the reasons given for the peremptory strikes to be unpersuasive. However, when considered in light of the controlling authorities cited above, one has no choice but to conclude the explanations given were facially valid and evidenced no discriminatory intent, i.e., were race-neutral. None of the rationales proffered by defense counsel was based on a characteristic or stereotype peculiar to any race. *Turner v. State*, 267 Ga. 149, 152 (476 SE2d 252) (1996). Therefore, the trial court's finding that the explanations were not race-neutral was clearly erroneous.

The state's argument that the explanations were properly rejected because defense counsel did not show that the explanations were case-related is without merit. We note that the question of whether the reasons given for the strikes must be related to the spe-

cifics of the case is, as Presiding Judge Pope wrote in a special concurrence in *Parker v. State*, 219 Ga. App. 361, 364-365 (464 SE2d 910) (1995), "in a state of flux" in the aftermath of *Purkett*, supra, where the U. S. Supreme Court did not require the race-neutral reason, i.e., that the juror had long hair and facial hair, to be related to the case. See also *Chandler*, supra. Nonetheless, because counsel in the instant case did give case-related reasons for striking juror nos. 8 and 13, this argument must fail in any event.

Whether the explanations should be believed and accepted as non-discriminatory is a different question from whether the explanations are race-neutral. Indeed, "[i]t is not until the *third* step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether *the opponent* of the strike *has carried his burden of proving purposeful discrimination.* At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge *may choose to disbelieve* a silly or superstitious reason at step 3 is quite different from saying that a trial judge *must terminate* the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." (Citations and punctuation omitted; emphasis in original and supplied.) *Purkett*, supra.

It is possible that the trial court in this case understood counsel's explanations to be race-neutral on their face, but did not accept them because it believed the reasons to be pretextual. If we are correct in our assumption, the trial court prematurely evaluated the persuasiveness of defense counsel's reasons for exercising the strikes and placed the ultimate burden of persuasion upon the proponent of the strikes when, under the controlling authorities, it is absolutely clear that the ultimate burden of persuasion rests with the opponent of the strikes. *Jackson*, supra at 899 (2). Because the trial court forced Malone and Smith to be tried by an illegally constituted jury, a new trial is demanded. See id. at 899-900 (2); *Chandler*, supra at 510.

We note that we do not reach this result very easily. We realize the difficulty trial judges face in creating a record which unequivocally shows that they considered each step of the three-part analysis separately. Indeed, there may be a natural tendency to consider the last two steps together, and decide at the moment the explanation is given whether it is silly, plausible, persuasive or pretextual. However, it is absolutely clear that the burden of persuading the trial court that the strikes were racially motivated rests with, and never shifts from, the opponent of the strike. See *Purkett*, supra. By requiring judges to consider each of the three parts of the *Batson* analysis separately, we safeguard against the burden of persuasion being

improperly shifted to the strike's proponent. For example, in the cases under consideration here, the opponent of the strikes established a prima facie case of racial discrimination and the proponents offered race-neutral explanations for the strikes. Without question, some of the explanations offered for the strikes were weak and unpersuasive. But they were valid on their face, and that is what matters at this step of the inquiry. Where, as here, the trial court forces the strikes' proponents to defend at step two explanations which were on their face race-neutral, it impermissibly transforms the opponent's burden of proving purposeful discrimination into the proponents' burden of disproving discrimination. This is precisely the type of error the three-step analysis is intended to guard against.

2. Based on the foregoing, we do not reach the other enumerations of error asserted by appellants.

*Judgments reversed and cases remanded for new trial. McMurray, P. J., and Judge Marvin W. Sorrells concur.*

DECIDED FEBRUARY 18, 1997 —
RECONSIDERATION DISMISSED MARCH 10, 1997.

*Brownlow & Schaefer, Ira B. Brownlow, Jr.,* for Malone.
*Michael R. Hauptman,* for Smith.
*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney, Michael J. Bowers, Attorney General, Nancy B. Allstrom, Assistant Attorney General,* for appellee.