## A97A0615. GILBERT v. THE STATE.
### (486 SE2d 48)

BLACKBURN, Judge.

Sammy Lee Gilbert, Jr., appeals his conviction for possession of cocaine with intent to distribute. During jury selection, Gilbert, a member of race group "B," utilized the majority of his peremptory strikes to remove individuals of another race from the jury. Gilbert contends the trial court erred when it ruled that two of Gilbert's strikes were not supported by race-neutral reasons and when it placed the burden upon him to prove that his reasons for striking the jurors were not racially discriminatory. We agree and reverse.

"[T]he equal protection clause prohibits a criminal defendant from engaging in purposeful discrimination on the basis of race in the exercise of peremptory challenges." *Chandler v. State*, 266 Ga. 509, 510 (467 SE2d 562) (1996), citing *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992). In order to evaluate whether or not a defendant exercised his peremptory challenges in a racially discriminatory fashion, "the trial court must engage in a three-step process. The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent. The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." (Punctuation and footnotes omitted.) *Chandler*, supra at 510.

Following jury selection, the State informed the court that Gilbert had used the majority of his strikes "to strike panel members of [another] race." The State asked the court to find that a prima facie case of racially discriminatory use of peremptory strikes had been made and to "explore the reasons for the [d]efense strikes." The court found that a prima facie case had been made and noted that of a jury panel containing twenty-three members of race "A" and seventeen members of race "B," eight members of race "B" and four members of race "A" had been selected to sit on the jury. Of Gilbert's nine peremptory strikes, eight were exercised against race "A" members.

Gilbert explained his reasons for exercising his peremptory strikes, and the court accepted his explanations for seven of the strikes as race-neutral. The court rejected, however, Gilbert's explanations for striking two male members of race "A," juror nos. 21 and

22. Gilbert asserted that he struck juror no. 21 because the juror worked for a particular business. Defense counsel had experienced "several run-ins" with this business and feared that because of those run-ins, juror no. 21 "may have heard of my name." Gilbert explained that he struck juror no. 22 because he worked at the post office, and his wife worked for a bank. Between either the post office or the bank, defense counsel felt like he had seen the juror before, although the juror denied knowing defense counsel. After rejecting Gilbert's explanations, the court reseated both jurors. Gilbert excepted on the record and stated that he had exercised these two strikes because defense counsel may or may not have had personal conflicts with juror nos. 21 and 22.

"[A]lthough the proponent of the strike must provide a clear and reasonably specific explanation of his legitimate reasons for exercising the challenges, what is meant by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." (Citations and punctuation omitted.) *Jackson v. State*, 265 Ga. 897, 898-899 (2) (463 SE2d 699) (1995), citing *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 1771, 131 LE2d 834) (1995), and *Batson v. Kentucky*, 476 U. S. 79, 98 (106 SC 1712, 90 LE2d 69) (1986). "[A race-]neutral explanation means an explanation based on something other than the race of the juror. Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race neutral." (Punctuation omitted.) *Jackson*, supra at 898, citing *Hernandez v. New York*, 500 U. S. 352, 360 (111 SC 1859, 114 LE2d 395) (1991) (majority opinion).

To the extent that Gilbert suggested that he struck the jurors because of their employment, "[a] strike based on a party's employment status . . . is not, on its face, racially discriminatory." *O'Neal v. State*, 226 Ga. App. 224, 225 (482 SE2d 478) (1997), citing *Trice v. State*, 266 Ga. 102, 103 (2) (464 SE2d 205) (1995). Gilbert's other reason for striking the jurors, that defense counsel felt that he knew the jurors and may have had personal conflicts with them, is not inherently discriminatory or based upon the race of either juror. Cf. *White v. State*, 154 Ga. App. 527, 528 (268 SE2d 790) (1980) (exercise of a peremptory strike by State allowed after juror acknowledged knowing defense counsel). "We must keep in mind that the reasonable suspicion of a juror's impartiality that prompts the exercise of a peremptory challenge need not rise to the level of justifying the removal of a venireman for cause." *Turner v. State*, 267 Ga. 149, 152 (476 SE2d 252) (1996). Therefore, contrary to the court's finding, Gilbert did offer race neutral reasons for striking juror nos. 21 and 22.[1]

---

[1] Several recent decisions of this Court address race-neutrality and strikes. See *Malone*

It is not entirely clear from the record whether the trial court combined steps two and three of the procedure set forth in *Chandler v. State*, supra, or merely terminated the procedure at step two after finding that Gilbert had not offered race-neutral reasons for his strikes.[2] It is clear from the facts of this case that the court should have found Gilbert's reasons race-neutral, and then shifted the burden at that point to the State to prove that the two strikes were racially motivated. As stated in *Chandler*, the burden of proving that a peremptory strike was exercised for racial reasons rests with the *opponent* of the strike, not its *proponent*, and at step three, the burden goes back to the opponent to prove that the strike was racially discriminatory. *Chandler*, supra at 510. If in fact the court did combine steps two and three of the process, in so doing, it improperly placed this burden upon Gilbert.

"In these matters, the findings of the trial court are entitled to great deference, and should not be disturbed unless clearly erroneous. However, here the trial court's finding was clearly erroneous, and forced [Gilbert] to trial with an illegally constituted jury." (Citation omitted.) *Jackson*, supra at 900. Gilbert is therefore entitled to a new trial.

*Judgment reversed. Pope, P. J., and Johnson, J., concur.*

DECIDED MARCH 25, 1997.

Before Judge Wilcox.
*Lester M. Miller*, for appellant.
*Charles H. Weston, District Attorney, Thomas J. Matthews, Assistant District Attorney*, for appellee.

---

*v. State*, 225 Ga. App. 315 (484 SE2d 6) (1997) (reversing a conviction where reasons given for strikes were race-neutral); *O'Neal v. State*, supra (jurors' employment status, marital status, and hostile attitudes are race-neutral reasons for strikes); *Leeks v. State*, 226 Ga. App. 227 (483 SE2d 691) (1997) (potential business relationship between prospective jurors a race-neutral reason to strike).

[2] In *O'Neal v. State*, supra, we noted that the trial court had likely combined steps two and three of the *Chandler* analysis and disapproved such combination.