## A97A1807. BURKETT v. THE STATE.
(497 SE2d 807)

JOHNSON, Judge.

After a jury trial, Darren Burkett was found guilty of possession of cocaine with intent to distribute. He appeals from the conviction entered on the verdict.

1. Burkett contends the trial court erred in disallowing five of his peremptory strikes and reseating the jurors on the panel after he gave race-neutral reasons for exercising the strikes. We agree and reverse.

During jury selection, Burkett, an African-American, exercised all 11 of his peremptory strikes against white veniremen. The state challenged the strikes pursuant to *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992). The trial court concluded that a prima facie case of racial discrimination had been established and required Burkett to explain the strikes. As to the five jurors who were eventually reseated, Burkett offered the following explanations: Burkett stated that he struck juror no. 3 because "folks who are retired from the Air Force tend to be prosecution minded." He struck juror no. 8 because he believed the juror responded affirmatively when asked if he had family in law enforcement, noted that the juror is retired, and remarked that "white folks that are retired, particularly in this case, who was doing some work for Bibb County might be inclined toward the prosecution." In defense of his strike of juror no. 9, Burkett stated the juror is retired or near retirement from the Air Force, and "folks from the [Air Force base] tend to be prosecution minded." Juror no. 11 was purportedly struck because he works at the Air Force base, is apparently close to retirement, and his wife works at a high school where there is "a very serious drug problem." As to juror no. 12, Burkett cited his age and the fact that he grew up "prior to this drug problem in our society."

The trial judge responded: "This Court does not accept employment at Robins Air Force Base or the fact that an individual has a spouse who teaches in the public schools as being a non-racial reason. . . . [Juror no. 8] did not indicate, the Court recalls, that he had

any friends or relatives in law enforcement. The remainder, the defendant has failed to state a non-racial reason. . . ." The trial court then reseated juror nos. 3, 8, 9, 11 and 12. Burkett objected to the ruling, contending that employment is a non-racial reason for striking jurors.

"To evaluate claims that the state or defendant used peremptory challenges in a racially discriminatory manner, the trial court must engage in a three-step process. The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent. The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." (Citations and punctuation omitted.) *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996). The record must show that the trial court considered each step of the three-step process separately. *Smith v. State*, 229 Ga. App. 765 (494 SE2d 757) (1997).

Except with regard to juror no. 8, Burkett articulated race-neutral reasons for striking each of the jurors from the panel. "A race-neutral explanation means an explanation based on something other than the race of the juror." (Punctuation omitted.) *Pickett v. State*, 226 Ga. App. 743, 745 (1) (487 SE2d 653) (1997). Contrary to the trial court's statement, employment, as well as age, are race-neutral explanations. See *Gilbert v. State*, 226 Ga. App. 230, 231 (486 SE2d 48) (1997); *Smith*, supra at 765, n. 1. The trial court should have accepted these explanations as race-neutral, then proceeded to step three and determined whether the state had established that Burkett's explanations were motivated by discriminatory intent. See *Jackson v. State*, 265 Ga. 897, 899 (2) (463 SE2d 699) (1995); *Pickett*, supra at 746.

It may be that the trial court refused to accept any of Burkett's explanations as race-neutral because it concluded that they were pretextual, particularly in light of the racial remark Burkett made in explaining one of his strikes. If in fact the court did this, however, it "prematurely evaluated the persuasiveness of [Burkett's] explanation[s], thereby impermissibly placing the ultimate burden of persuasion upon the proponent of the strike." *Jackson*, supra at 899 (2). The state having failed to meet its burden of persuasion, the reinstatement of the jurors resulted in an illegally constituted jury. See *Chandler*, supra; *Leeks v. State*, 226 Ga. App. 227, 229 (3) (483 SE2d 691) (1997). Burkett is entitled to a new trial.

2. Because the issue of the admissibility of similar transaction evidence is likely to recur on retrial, we will address it here. Burkett contends the prior transaction was not relevant to a legitimate issue,

was prejudicial and was not similar to the charged offense. We disagree.

The state sought to introduce the evidence to show scheme, bent of mind, and course of conduct. In October 1991, an undercover officer went to the corner of Norris and Stewart Streets and yelled "anybody straight," indicating that she wanted to purchase crack cocaine. Burkett approached the officer's unmarked car and sold her one piece of unwrapped crack cocaine for $20. She went back the next day and purchased another $20 piece of crack cocaine wrapped in a piece of plastic which was tied in a knot. Burkett pled guilty to simple possession on those charges and received a 30-year sentence.

In this incident, which occurred in December 1995, uniformed police officers saw Burkett standing on the porch of a vacant house on Norris Street. Burkett ran into the house. The officers left and drove back by the unoccupied house the next day. They saw Burkett again. This time they stopped and asked him to approach the police car. When he did not, one of the officers got out of the car and walked toward Burkett. Burkett turned and walked quickly into the vacant house. The officer followed him and saw that he "was doing something" at the sofa. The officer moved a pillow from the sofa and discovered 43 $20 pieces of crack cocaine, 19 of which were wrapped in pieces of plastic tied in a knot.

"A similar transaction need not be identical in order to be admissible. [Cit.]" *Woods v. State*, 224 Ga. App. 52, 55 (3) (479 SE2d 414) (1996). There was a logical connection between the incidents in that all three transactions took place on the same street, all involved $20 pieces of crack cocaine, and in the instant case and one of the similar transactions the cocaine was packaged in pieces of knotted plastic. The transactions were sufficiently similar to the charged offense. Moreover, the similar transaction evidence was relevant because it indicated a common design and course of conduct from which a jury could infer that Burkett both possessed and intended to distribute the cocaine. See id. Proof of the similar transactions tended to establish the offense charged. We find no error. See *White v. State*, 225 Ga. App. 74, 76 (2) (483 SE2d 329) (1997).

3. In light of our holding in Division 1, we need not address Burkett's enumeration of error regarding the sufficiency of the evidence introduced at the first trial.

*Judgment reversed. Pope, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 20, 1998.

*Joseph M. Williams*, for appellant.

*Charles H. Weston, District Attorney, Kirby H. Wincey, Jr., Assistant District Attorney*, for appellee.