### A97A1566. McKENZIE v. THE STATE.
(490 SE2d 522)

BLACKBURN, Judge.

This is the second appearance of this case before this Court. In *McKenzie v. State*, 223 Ga. App. 108 (476 SE2d 868) (1996), we conditionally affirmed Raleigh McKenzie's convictions of child molestation, incest, rape, and aggravated sexual battery. However, with respect to McKenzie's contention that the trial court erred in upholding the State's challenge to one of McKenzie's peremptory strikes, we remanded such issue to the trial court for entry of written findings on whether such strike was racially motivated. Id. at 114 (3) (c). On remand, the trial court entered an order expressly finding that the strike was racially motivated, and McKenzie appeals from this order. For the reasons discussed below, we affirm.

1. Before addressing the merits of this case, it is necessary to discuss the relevant analytical framework and the appropriate standard of review. The United States Supreme Court has established a three-step test for evaluating challenges to peremptory strikes. "[O]nce the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination." *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834, 839) (1995); see also *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986); *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992) (applying *Batson* to strikes by criminal defendants). The Supreme Court has held that "[t]he *second* step of this process does not demand an explanation that is persuasive, or even plausible. . . . Unless a discriminatory intent is inherent in the [proponent's] explanation, the reason offered will be deemed race neutral." (Citation and punctuation omitted; emphasis supplied.) *Purkett*, supra. See also *Gilbert v. State*, 226 Ga. App. 230 (486 SE2d 48) (1997); *Malone v. State*, 225 Ga. App. 315 (484 SE2d 6) (1997).

However, although a trial judge must accept a facially race-

neutral explanation *for purposes of determining whether the proponent has satisfied his burden of production at stage two*, this does not mean that the judge is bound to *believe* such explanation at stage three. That is, while the judge may find that a proffered explanation is race-neutral, he is not required, at stage three, to find that the proffered explanation was the *actual* reason for striking the juror. At stage three, "the persuasiveness of the [proffered] justification becomes relevant[,] . . . [and] implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett*, supra.

The question thus arises as to what type of evidence is sufficient to enable the trial court to find that the actual reason for exercising the strike was discriminatory. In making its decision, the trial judge is to consider the totality of the circumstances. *Turner v. State*, 267 Ga. 149, 151 (476 SE2d 252) (1996). It will rarely be the case that a party will admit that his purpose in striking a juror was racially discriminatory. Accordingly, the trial court in most cases must infer discriminatory intent from circumstantial evidence. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons[ ] will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and . . . no additional proof of discrimination is *required*." (Punctuation and footnote omitted; emphasis in original.) *St. Mary's Honor Center v. Hicks*, 509 U. S. 502 (113 SC 2742, 125 LE2d 407, 418-419) (1993).[1] In addition, the court may consider whether "similarly-situated members of another race were seated on the jury" or whether "the race-neutral explanation proffered by the strikes' proponent is so implausible or fantastic that it renders the explanation pretextual." *Turner*, supra at 151. The trial court may also consider "the demeanor of the attorney who exercises the challenge," which is often the best evidence of the credibility of his proffered explanations. *Hernandez v. New York*, supra at 365.

In determining whether a strike was in fact racially motivated, the trial court sits as the trier of fact, and its findings "are entitled to great deference and will be affirmed unless clearly erroneous." *Turner*, supra at 151; see also *Smith v. State*, 264 Ga. 449, 451 (448 SE2d

---

[1] *St. Mary's* dealt with employment discrimination under Title VII of the Civil Rights Act of 1964. However, the reasoning of *St. Mary's* is applicable to *Batson* and *McCollum* cases, as the Supreme Court has relied on Title VII cases in constructing and applying its burden-shifting analysis in such cases. See *Batson*, supra at 94 (n. 18), 98 (n. 21); *Purkett*, supra at 839; *Hernandez v. New York*, 500 U. S. 352, 359, 364-365 (111 SC 1859, 114 LE2d 395) (1991). Indeed, McKenzie himself cites *St. Mary's* in his appellate brief.

179) (1994). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (Punctuation omitted.) *Hernandez*, supra at 369.

2. In this case, the evidence supports the trial court's finding that the proffered reasons for McKenzie's strike were pretextual, and that the strike was actually exercised for a racially discriminatory purpose. McKenzie utilized 11 of his 12 peremptory strikes to eliminate white female jurors. As we recognized in our prior opinion in this case, this "overwhelming use of peremptory strikes to exclude jurors of one race establishes a prima facie showing of discrimination." (Punctuation omitted.) *McKenzie*, supra at 114 (3) (b).

When asked to explain her reasons for striking the juror at issue, McKenzie's attorney gave a hodgepodge of reasons, stating that "[s]he had two daughters, 28-year-old — well, she had a 28-year-old daughter, she had no grandchildren, she had a brother-in-law who had been arrested for drugs. . . . She indicated she was a party to lawsuit regarding money. She had a 28-year-old daughter. . . . I think the impetus there was . . . that she had a daughter." However, in the motion for new trial hearing, the trial attorney testified that "I felt that I didn't have a legitimate reason for excluding her." She testified that, when asked to justify her strike, "I didn't have what I would deem a legitimate reason to be able to express to the court as to why I had not — I didn't want her on the jury. . . . It was just a guttural reaction, that I felt she would not be beneficial, but I didn't have a legitimate reason as to any of the questions that she may have answered. . . . I didn't feel my guttural reaction was a legitimate reason to exclude her and I did not have any other legitimate reasons to call to mind to be able to tell Judge Hunter."

Thus, not only was the trial court *authorized* to disbelieve McKenzie's proffered explanations for the strike, but McKenzie's attorney actually *admitted* that her proffered reasons were false. After admitting that her original explanations were not genuine, the attorney failed to identify any specific reason for striking the juror, although she denied any discriminatory intent. However, a proponent may not rebut the opponent's case "merely by denying that [she] had a discriminatory motive or affirming [her] good faith in making individual selections." (Punctuation omitted.) *Batson*, supra at 98 (III) (C). Furthermore, the trial judge was authorized to consider the attorney's admittedly false explanations as affecting the credibility of her claim that race was not an issue. Indeed, the attorney testified that "you've got to admit, when it was all said and done, it was a great jury to have for this particular case. I'll let it be because either they were predominately black or they were predominately male." Given the deferential standard of review applied to factual findings made by the trial judge, who alone has the opportunity to observe the

witnesses' testimony and evaluate their credibility, we cannot say that the trial judge's finding of purposeful discrimination was clearly erroneous. See *St. Mary's*, supra (disbelief of proffered explanations, together with establishment of prima facie case, sufficient to authorize factfinder to find discriminatory intent).

3. McKenzie also contends that the trial court's order was procedurally defective because the court failed to hold an evidentiary hearing upon remand, but rather simply entered its order based upon the existing record. This contention is without merit. In our previous opinion, we expressly stated that "this case is remanded *solely* to allow the trial court to enter written findings on the issue of racially discriminatory intent in the striking of [the juror]. The trial court *may* conduct a hearing *if it deems one necessary or advisable*." (Emphasis supplied.) *McKenzie*, supra at 114 (3) (c). Thus, the necessity of a further hearing was expressly left to the trial court's sole discretion.

Furthermore, a hearing was not required because the trial court had already heard all the evidence necessary to make its findings on the issue of discriminatory intent. The court heard from the parties at the time the State made its *McCollum* objection. The court heard further testimony and argument at the hearing on the motion for new trial, when McKenzie's trial attorney was extensively questioned by his current appellate attorney. As the United States Supreme Court noted in *St. Mary's*, "once the defendant has responded to the plaintiff's prima facie case, the district court has before it all the evidence it needs to decide *not* [only] . . . whether defendant's response is credible, but whether the defendant intentionally discriminated against the plaintiff. [Cit.]" (Punctuation omitted; emphasis in original.) *St. Mary's*, supra, 125 LE2d at 424. Similarly, in this case, the trial court had before it all the evidence it needed to decide the issue and was not obligated to hold an additional hearing.

McKenzie's contention that the trial court's order was insufficient because it failed to make specific findings is also without merit. The court stated in its order that it had considered McKenzie's explanations, his attorney's demeanor, a review of the record, and the court's independent recollection of the proceedings and specifically found that the strike was racially motivated. The court further noted that "defense counsels' explanations for their strikes were subjective, vague, not based on [the juror's] answers on voir dire, and not neutrally applied."

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED JULY 30, 1997 — ▮

*Drew Findling, Elizabeth L. Rankin,* for appellant.
*J. Tom Morgan, District Attorney, Desiree S. Peagler, Jeffrey H. Brickman, Assistant District Attorneys,* for appellee.