## S06A0596. ALLEN v. THE STATE.
### (631 SE2d 699)

CARLEY, Justice.

Elliot Russell and Nikia Woods were talking outside of her apartment when a white pickup truck drove up. Ms. Woods recognized Brandon Allen as one of several occupants of the vehicle. Allen exited the truck and pointed a gun at them. Ms. Woods was ordered to leave. She complied, and called 911. Looking out of a window, Ms.

---

Woods saw and heard a burst of gunfire from Allen's weapon. Russell was hit and died from the gunshot.

Ms. Woods testified for the prosecution. Her testimony was corroborated by other eyewitnesses. At trial, Allen offered an alibi defense. However, the jury found him guilty of malice murder of Russell, aggravated assault on Ms. Woods and possession of a firearm during the commission of aggravated assault against Russell. The trial court sentenced him to life imprisonment for murder, and to consecutive terms of twenty and five years for the remaining two offenses. Allen filed a motion for new trial, which the trial court denied. He appeals from the judgments of conviction and sentences entered by the trial court on the jury's guilty verdicts.[*]

1. Allen does not enumerate the general grounds. However, an independent review of the transcript shows that, when construed most strongly in support of the jury's verdicts, the evidence is sufficient to authorize a rational trier of fact to find proof of his guilt of the three crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Allen is African-American and, during jury selection, he used nine peremptory strikes. All nine strikes were used against white prospective jurors and eight of those nine were males. The State challenged the strikes, asserting a racial motivation for their use. See *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992). The trial court found that Allen's explanation for striking only one of the jurors was pretextual, and sustained the prosecution's challenge to that limited extent. Allen enumerates the trial court's ruling as error.

(a) Initially, the State urges that the *McCollum* issue has been waived, relying on the principle that a contemporaneous objection is required in order to afford the trial court an opportunity to take remedial action. See *Spickler v. State*, 276 Ga. 164, 166 (5) (575 SE2d 482) (2003); *Bailey v. State*, 273 Ga. 303, 306 (3) (540 SE2d 202) (2001). The record shows that, immediately after conducting the hearing on the prosecution's challenge to Allen's use of his peremptory strikes, the trial court asked attorneys for both sides whether "other than [those raised] in the jury room, are there any further objections as to the method of selection?" Counsel for the State signified her acceptance of the jury and the lack of any further

---

[*] The crimes were committed on June 28, 2000. The grand jury indicted Allen on January 4, 2002. The jury returned the guilty verdicts on August 8, 2003. The trial court entered the judgments of conviction and imposed the sentences on August 12, 2003. Allen filed a motion for new trial on August 27, 2003, and the trial court denied the motion on June 13, 2005. He filed a notice of appeal on July 1, 2005, and the case was docketed in this Court on December 8, 2005. The appeal was submitted for decision on January 30, 2006.

objections. Allen's lawyer also stated that she accepted the jury, subject "only [to] those exceptions earlier stated." The State contends that this is waiver because Allen's attorney did not specify that the "earlier stated" objections that she intended to preserve related to the trial court's sustaining of the State's challenge to the defense's use of a peremptory strike against one of the white male prospective jurors. However, considering that the colloquy occurred immediately after the hearing on the State's *McCollum* challenge, it is clear that the "earlier stated" objections which were expressly preserved by Allen's lawyer must necessarily include that particular issue. Moreover, the trial court's alleged error does not consist of the failure to sustain a belated defense objection. Compare *Spickler v. State*, supra; *Bailey v. State*, supra. To the contrary, Allen contends that the trial court erred by sustaining the State's objection to his use of a peremptory strike. That favorable ruling for the prosecution had already occurred at the time the trial court inquired about "further objections" and, under those circumstances, no after-the-fact contemporaneous objection was necessary in order to give the trial court an opportunity to take remedial action. The trial court's allegedly erroneous action occurred when it previously rejected Allen's defense of his peremptory strike as non-racial, and the merits of his objection to that action on the part of the trial court were preserved for appeal.

(b) In *McCollum*, the Supreme Court of the United States

> held that the equal protection clause prohibits a criminal defendant from engaging in purposeful discrimination on the basis of race in the exercise of peremptory challenges. [Cit.] To evaluate claims that the . . . defendant used peremptory challenges in a racially discriminatory manner, the trial court must engage in a three-step process. [Cits.] The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent. [Cit.]

*Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996). The State showed a prima facie case of racial discrimination by virtue of Allen's use of all of his peremptory strikes to remove whites from the jury. *Lingo v. State*, 263 Ga. 664, 665 (1) (a) (437 SE2d 463) (1993). In response to that showing, Allen defended the single strike in question as predicated upon the juror's friendship with the district attorney in a neighboring circuit and that district attorney's wife, and the concern the juror expressed on voir dire about the work-related

inconvenience that would be caused by jury service. Since these are ostensibly race-neutral reasons, the third step of the *McCollum* analysis is the dispositive issue on appeal.

Where, as here, racially-neutral reasons are given, the trial court must ultimately decide

> "whether counsel is telling the truth in his or her assertion that the challenge is not race-based." [Cit.] "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the [lawyer's] state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' (Cits.)" [Cit.]

*Smith v. State*, 264 Ga. 449, 454 (4) (448 SE2d 179) (1994).

> The opponent of a strike is not required to submit evidence which proves discriminatory intent during step three. Instead, the opponent may carry its burden of persuasion by reference to the facts and circumstances surrounding the proponent's use of its peremptory strikes.

*Curry v. State,* 238 Ga. App. 511, 514-515 (1) (b) (519 SE2d 269) (1999).

> [T]he trial court in most cases must infer discriminatory intent from circumstantial evidence. "The factfinder's disbelief of the reasons put forward [for the strike] (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the . . . proffered reasons( ) will permit the trier of fact to infer the ultimate fact of intentional discrimination, and . . . no additional proof of discrimination is required." [Cit.] (Emphasis omitted.)

*McKenzie v. State*, 227 Ga. App. 778, 779 (1) (490 SE2d 522) (1997). Because the third step of the *McCollum* procedure requires the trial court to act as the trier of fact, its findings "are entitled to great deference and will be affirmed unless clearly erroneous. [Cit.]" *Turner v. State*, 267 Ga. 149, 151 (2) (476 SE2d 252) (1996).

"The persuasiveness of a proffered explanation may be magnified or diminished . . . by the strength of the prima facie case. . . . [A] weak prima facie case may be rebutted more readily than a strong one." *Gamble v. State*, 257 Ga. 325, 327 (5) (357 SE2d 792) (1987). Conversely, a strong prima facie case may not be rebutted as readily as a weak one. As noted, Allen used all nine of his strikes against white potential jurors, eight of whom were men. "This overwhelming ' "pattern" of strikes . . . give(s) rise to an inference of discrimination.' [Cit.]" *Gamble v. State*, supra at 326 (3). When the very strong prima facie case of discrimination is weighed against Allen's explanations, the record shows that he did not express any reason why the juror's friendship with the district attorney in the Stone Mountain Judicial Circuit and his wife was case-related. See *Blair v. State*, 267 Ga. 166, 167 (2) (476 SE2d 263) (1996) (race-neutral explanation must be "case-related"). Moreover, the record does indicate that Allen did not challenge at least one other juror with a friend who worked as a prosecutor in the same Stone Mountain Judicial Circuit.

The trial court found that Allen's reliance on non-racial explanations to defend the strike was implausible and a mere pretext to disguise discrimination against white males. " 'The Equal Protection Clause of the United States Constitution prohibits discrimination in jury selection on the basis of gender as well as race. [Cits.]' [Cit.]" *McGlohon v. State*, 228 Ga. App. 726 (1) (492 SE2d 715) (1997). "It is well established that a trial judge, who has the opportunity to evaluate the demeanor and credibility of the proponent of a strike, may choose to disbelieve implausible . . . justifications for a strike during step three of the analysis. [Cits.]" *Curry v. State*, supra at 515 (1) (b).

> To overturn the trial court's determination in this case would constitute de novo appellate review of a ruling made at stage three of the *McCollum* inquiry. We will not contravene precedents obliging this Court to accord great deference to the trial court's findings and to affirm them unless they are clearly erroneous. [Cits.]

*Gay v. State*, 258 Ga. App. 634, 637-638 (1) (574 SE2d 861) (2002). *Judgments affirmed. All the Justices concur.*

DECIDED JUNE 26, 2006.

*Carl P. Greenberg*, for appellant.
*Paul L. Howard, Jr.*, District Attorney, *Christopher M. Quinn, Bettieanne C. Hart*, Assistant District Attorneys, *Thurbert E. Baker*,

Attorney General, Edwina M. Watkins, Assistant Attorney General, for appellee.